KETCHUM & CUMMINGS *v.* J. P. BRENNAN.

1. CONDITIONAL SALE. *Purchase-money payable in instalments. Bona fide purchaser from vendee.*

  A. delivered personal property to B. under a contract, not recorded, that B. should pay the price by instalments, and that until such payment in full the title should not vest in B., but should remain in A. Before full payment by B., he sold and delivered the property to C., who had no notice of the terms of the contract between A. and B., but bought the property on the faith of B.'s possession. *Held*, that C. acquired no title as against A., and that A. could recover the property from C., after breach of the condition on which title was to vest in B.

2. PERSONAL PROPERTY.   *Purchase from one in possession.*

Possession of personal property is not title.   It is *prima facie* evidence of title, but nothing more, and will not protect one who buys on the faith of it against the holder of the title.

3. CONDITIONAL SALE.   *Burden of proof to show condition and breach.*

In an action of replevin by the conditional vendor against a *bona fide* purchaser from his vendee to recover the property conditionally sold, the burden of proof is on the plaintiff to show the condition of the sale, and that it has not been complied with, so that his right to possession has accrued.

4. SAME.   *Waiver of condition.*

Where by the contract of sale of personal property the possession is given to the vendee, while the vendor retains the title until the purchase-money, due in instalments, is paid in full, the right of the vendor, as reserved by the contract, will be protected against a *bona fide* purchaser from the vendee, unless he has in some way waived the condition, or done or suffered something to mislead the purchaser from his vendee.

5. EVIDENCE.   *Written instrument.   Secondary evidence.   Point, how reserved.*

To prove a written contract of sale, the instrument itself must be produced, or its non-production accounted for.   But where it is proved by secondary evidence, objection to the evidence on specific grounds must be made when it is offered and reserved, or this court will not notice the objection.

6. CONDITIONAL SALE.   *Suit by vendor for property.   Rescission of contract. Condition precedent.*

Where personal property is sold on condition that the title shall remain in the vendor until payment in full by the vendee of the purchase-money, due in instalments, a rescission of the contract, by returning or offering to return what has been paid on the contract of sale, is a condition precedent to the vendor's right to sue for the property.   If the action is against the original vendee, the money must be brought into court by the plaintiff; but if the action by the original vendor is against a purchaser from his vendee, the tender to his vendee is sufficient, and the money need not be paid into court.

7. FRAUD.   *Payment and receipt.   Misrepresentations.   Erroneous instruction.*

In an action by a vendor to recover from a purchaser from his vendee property sold on condition that the title should remain in the vendor until the purchase-money, due in instalments, was paid in full, where the vendor, to establish breach of the condition, sought to prove that he was induced to give a receipt and accept, as payment, certain property, by the fraudulent representations of the vendee and subvendee, it is improper to .charge the jury that if they believe the

receipt was procured by the representations, whether the representations were true or false, provided the vendor relied on them, they will find for the plaintiff.

8. REPLEVIN. *Verdict. Must assess what.*
   In an action of replevin for various articles of machinery, the verdict should find the value of the different articles separately.

9. MARRIED WOMAN. *Bond by her in judicial proceedings.*
   A married woman, who jointly with another has personal property in possession, which, being seized under a writ of replevin, is restored to them on their giving bond, is subject to judgment on the bond against her and the other obligors.

ERROR to the Circuit Court of Alcorn County.

Hon. B. B. BOONE, Judge.

On 29th November, 1875, J. P. Brennan sued out a writ of replevin, commanding the sheriff to seize the following lot of machinery, to wit: Two engines, lathes, and counter-shafting, one iron planer and counter-shafting, one wood-lathe and counter-shafting, one line of shafting with pulleys and coupling, four lengths of shafting, one pair of boiler-shears, one boiler-plate punch, one foundry-crane, two ladles, and all the other machinery contained in the foundry of Ketchum & Cummings, in Corinth, Miss., the said Brennan being entitled to the immediate possession of the same. The property having been seized by the sheriff, and by him valued at $3,000, Thomas Ketchum and L. E. Cummings retained it, giving bond to have it forthcoming to satisfy the judgment of the court in said cause.

On the same day, Brennan filed his declaration in the case against Thomas Ketchum and L. E. Cummings, partners, under the firm name of Ketchum & Cummings, alleging that they took the machinery aforesaid, and unjustly detain the same from him. To which the defendants pleaded not guilty.

Trial by a jury, who returned, " We, the jury, find for the plaintiff, and assess the value of property at two thousand (2,000) dollars." On which verdict a judgment was entered " that said defendants do restore the said property to the plaintiff, and, failing therein, that the plaintiff have and recover of and from said Thomas Ketchum and L. E. Cummings, defendants, and H. Mitchell, A. J. Yancy, and J. M. New, sureties

on their replevin bond, the sum of $2,000, the value of said property as assessed by the jury," &c.

Before the trial, a notice was served by the plaintiff on the defendants, to produce the original of the following copy on the trial, or he would offer secondary evidence of its contents : —

"This agreement, entered into between James P. Brennan, of Philadelphia, Pa., by his attorney, E. H. East, and M. W. Burke, of Corinth, Miss., witnesseth, that the party of the first part sells to the party of the second part the machinery known as the Brennan machinery, including the items as set forth in schedule, for the sum of $2,000.  The party of the second part agrees to pay to the party of the first part said $2,000 in the following manner, to wit: $300 in hand on signing contract; $200 when machinery is shipped or accepted ; $500 in four months from date; the remaining $1,000 to be paid in three promissory notes of $333⅓ each in six, twelve, and eighteen months, bearing interest at the rate of eight per cent per annum until paid.

"It is also agreed that the title to the above-mentioned machinery remains with the party of the first part, until the obligations entered into in this instrument are fully complied with.

"Signed, March 30, 1875.

"J. P. BRENNAN, by E. H. EAST, *Attorney.*

"Witness: T. M. BRENNAN.                    "M. W. BURKE."

To the notice the defendants answered they had no such instrument in their possession, and could not produce it.

On the trial, the plaintiff proved that Green & Pickens, as attorneys for Brennan, had in their hands for collection the notes mentioned in the foregoing agreement, and that Burke offered to pay the notes, except a small balance of $200, due in September, 1876, by assigning to Brennan a note for $1,364, secured by a deed of trust on a factory and machinery in Corinth belonging to J. F. Edgar.  There was another trust deed on the same property, in favor of A. H. Taylor, for $4,800, but Burke and Charles Cummings assured Green & Pickens that the Burke trust deed was signed, sealed and delivered hours before the other, and was prior to it.  At that time, having no authority, Green & Pickens did not accept Burke's offer.  Mr. Pickens probably examined the records,

and investigated the priority of the deeds of trust. Subsequently, Green & Pickens accepted the Edgar note and trust deed in payment, gave up the notes, and gave a receipt to Burke.

When Green & Pickens advertised the property for sale, they were informed that the Burke deed of trust was not prior to Taylor's, and they then requested Burke to call at their office, which he did, in company with Charles Cummings and Thomas Ketchum, one of the defendants. They charged Burke with having stated that his deed was prior to Taylor's; and Burke said, Yes, he had, believing the statement true. They then proposed to rescind the trade, and place all parties where they were before, and tendered him $500, and Burke declined.

The plaintiff's attorney handed a witness the copy of the contract of sale, which the witness identified as a copy of the contract of sale made by him from the original which Burke had handed him.

On discovering the imposition practised upon them, Mr. Pickens went (after consulting Judge Green) to Burke, and tendered back the Edgar note and deed of trust, and demanded back the receipt and notes given up, which Burke refused. Mr. Pickens then demanded of Burke and Ketchum & Cummings the surrender and delivery of the machinery sued for, and, on their refusal to do so, instituted this suit for its recovery.

A. H. Taylor, for the plaintiff, testified that he thought his deed of trust was prior to Burke's deed of trust, because they were both signed at the same time, and his was lying on top. They were delivered to the clerk at same time for record. Burke's was first in record-book.

The plaintiff then introduced counsel for the defendants, and proved by him that he had a duplicate copy of the contract of sale aforesaid, and the same was produced, and given in evidence. To this the defendants excepted, and took their first bill of exceptions. And the plaintiff rested.

The defendants introduced evidence that what Burke said to Messrs. Green & Pickens was that he was informed and believed that his trust deed was prior, not that he knew it was. It is on a prior page of the deed record-book.

L. E. Cummings, one of the defendants, a married woman, purchased of Ketchum a one-third interest in the machinery; and she had no knowledge that Brennan had any claim on the same, until the bringing of this suit.    Thomas Ketchum purchased the machinery, in good faith, from Burke, not knowing of Brennan's claim.    Burke wrote to Brennan that he had made the sale at the time he sold to Ketchum.    One copy of the contract of sale in evidence being shown to Burke, he stated it was given to him by Brennan as a duplicate copy, and he believed it contained the true contract, but had never compared it with the original, and did not know.    The defendants then moved the court to exclude from the jury both the papers purporting to be the contract or copy of the contract between the plaintiff and M. W. Burke, which motion the court overruled.    To this ruling of the court the defendant took a second bill of exceptions.

The defendants also produced, and proved the execution of, the receipt of Green & Pickens, attorneys for James P. Brennan, acknowledging that they had received the Edgar-Burke trust deed and note, in payment of the purchase-money for the machinery, except the $200 not yet due at the time of trial.

This was all the evidence.

The following instruction, among others, was given for the plaintiff:—

3.  " If the jury believe from the evidence that Brennan retained the title in himself until the property was paid for, and that said property has not been paid for, and further believe that the receipt executed to Burke by Green & Pickens was procured by the representations of Burke and the defendants, or either of them, whether the said representations were true or false, provided Green & Pickens relied on them, they will find for the plaintiff."

The defendants moved for a new trial, on the ground that the finding of the jury was contrary to the law and evidence; and, on the overruling of the motion by the court, took a bill of exceptions.

The plaintiff, on the trial, having tendered $500 to the defendants, the defendants, pending the trial, moved for a rule on the plaintiff to pay into court the $500 received from Burke,

and afterwards tendered to Burke, and on the trial tendered to the defendants; which motion being undisposed of, the defendants moved the court to set aside the order overruling the motion for a new trial, and dispose of said preliminary motion. This motion was overruled. The defendants then moved for a new trial because said money was not paid into court, which was overruled; and for the same cause moved in arrest of judgment, which was overruled; and for the same cause moved for a stay of execution until the money was paid into court, which was overruled. To the judgments of the court overruling said motions the defendants excepted and took their bill of exceptions.

*L. P. Reynolds*, for the plaintiffs in error.

1. A tender of money is not good unless it is continuous and the money paid into court on or before the day of trial. *Gibson* v. *Doherty*, 43 Miss. 438; *Emmons* v. *Myers*, 7 How. (Miss.) 375; *Livingston* v. *Harrison*, 2 E. D. Smith, 197; 1 E. D. Smith, 399; 14 Wend. 224. The plaintiff cannot retain the $1,500 Edgar note, the $500 cash, and recover the property also.

2. It is not shown either that the Edgar-Burke trust deed was not in fact a prior deed, nor that, if subsequent, the property is not amply sufficient to pay off both trust deeds. Hence the statements of Burke are not shown to be such as would vitiate the contract. *Davidson* v. *Moss*, 5 How. (Miss.) 673; *Halls* v. *Thompson*, 1 S. & M. 443; *Harris* v. *Ransom*, 24 Miss. 504.

3. The court erred in admitting the copy of the contract of sale as evidence. *Baldwin* v. *McKay*, 41 Miss. 363; 1 Phillips on Evidence, 570; *Kellogg* v. *Kellogg*, 6 Barb. 130.

4. The jury should have assessed the value of each article separately. *Whitfield* v. *Whitfield*, 40 Miss. 352.

*J. A. Brown*, on the same side.

1. The plaintiff waived the condition by delivering possession of the property to Burke, permitting him to have the *indicia* of ownership, and not objecting to the sale to Ketchum when informed of it. *Vaughn* v. *Hopson*, 10 Bush (Ky.), 339; *Waite* v. *Green*, 36 N. Y. 556; *Martin* v. *Mathiot*, 14 S. & R. 214; *Hussey* v. *Thornton*, 4 Mass. 405.

2. The measure of damages was wrong.  Brennan has received $500 and a trust deed in payment of $1,364, leaving but a small sum unpaid, and it is not yet due.  The verdict is for the full value of the machinery.  *Rose* v. *Story*, 1 Barr (Penn.), 196, 197; *Warner* v. *Matthews*, 18 Ill. 87; *Lloyd* v. *Goodwin*, 12 S. & M. 229; *Single* v. *Schneider*, 24 Wis. 300; *Herdic* v. *Young*, 55 Penn. St. 176; *Curtis* v. *Ward*, 20 Conn. 207; *Chamberlain* v. *Shaw*, 18 Pick. 283.

3. Possession alone is *prima facie* evidence of ownership; and a purchaser has the right to consider the property as that of the vendee, if found in his possession.  It is therefore incumbent on the vendor, who would claim the ownership adversely to the rights of such purchaser, to prove that the sale was on condition, and that the condition has not been complied with.  *Hill* v. *Freeman*, 3 Cush. 259; *Leighton* v. *Stevens*, 19 Maine, 154, 155.  Under § 2306, deeds of trust take effect from the time they are delivered to the clerk to be recorded, and, if the term " deeds " in *the proviso* be applied to deeds of trust, from the time they are sealed and delivered.  There is no evidence which of the deeds of trust in the case at bar was first sealed or delivered.  They were handed to the clerk to be recorded at the same instant, and Burke's was recorded first.  The property, for all that appears in the evidence, may be ample to pay them both.  With the proof in this condition, the court gave the third instruction for the plaintiff, that " if the jury believe the receipt was procured by the representations of Burke, they will find for the plaintiff, whether the representations were true or false."  This, of course, misled the jury, and caused the erroneous verdict.  It was a partial instruction, and did not give the true rule, as far as it went.  If Burke's representations were true (and the proof indicates they were true), there was no ground to rescind the payment; and if they were false, that was not enough.  The question whether any injury had resulted to the plaintiff should have been submitted; for if the deed of trust was just as valuable as if his representations had been true, there was no ground to rescind.  The plaintiff then having the burden of proof to show a breach of the condition, has utterly failed to prove it.

*Green & Pickens*, for the defendant in error.

1. Where the condition of a sale and delivery of goods is that the title shall not pass until the price is paid, the vendee has no title in himself, nor can he convey any to a *bona fide* purchaser for a valuable consideration. Upon failure to fulfil the condition, the vendor may maintain trover or replevin for the goods. Story on Sales, §§ 457 *a*, 313; 8 Gray, 159; 3 Gray, 545; 5 Gray, 306; 7 Gray, 155; 8 N. H. 325; 12 N. H. 290; 44 Maine, 491; 23 Ga. 205; 15 Conn. 384.

2. In case of a conditional sale of goods, where the condition is not performed by the vendee, the vendor may establish his property in the goods without showing the contract rescinded, and without returning a partial payment made by the vendee. *Marston* v. *Baldwin*, 17 Mass. 606.

3. The rule is well settled, that if a vendor misrepresents a material fact in relation to title or quality of an estate, though innocently and under a belief of its truth, or if he conceals any material circumstance, the contract should be rescinded. Fraud vitiates every contract into which it enters, and a vendor who makes statements which he knows to be untrue is guilty of a direct fraud on a vendee who is thereby deceived to his prejudice ; and if he makes statements without knowing whether they are true or false, he is guilty of a fraud in law, and must make his statements good. Whether a party making a misrepresentation of a material fact knew it to be false, or made it without knowing it to be true or false, is wholly immaterial, the affirmation of what is not known to be true being equally unjustifiable as the affirmation of a positive known falsehood. Even the innocent misrepresentation of a material fact is conclusive; for it is a surprise and imposition upon the other party. *Davis* v. *Heard*, 44 Miss. 50, 57, 58.

4. The verdict need not assess the separate value of each article embraced in the finding. Whatever, in common understanding, are regarded as parts of a whole, may be assessed together, as a carriage and harness. *Drane* v. *Hilzheim*, 13 S. & M. 336. The rule does not extend so as to exclude from a valuation in gross articles which, though distinct, are necessary parts of a whole ; and hence it will not be error to assess the value of a " saw-mill, irons, and the apparatus for running

the same," as a single article, and so " the hopper and appara-
tus " of a mill.    *Kibble* v. *Butler*, 14 S. & M. 207.    The reason
for the rule is, that upon the delivery of any one or more of the
articles, the defendant would be discharged from the payment
of the articles so delivered.   *Whitfield* v. *Whitfield*, 40 Miss. 352.
Yet where, in an action of replevin, there has been a failure
to assess in the verdict the separate value of the articles found,
the Appellate Court, in analogy to the provisions of the Stat-
ute of Amendments, which regulates verdicts of a similar
nature in actions of detinue, remands the cause to the Circuit
Court, with instructions to that court to award a writ of in-
quiry to ascertain such separate values.    *Drane* v. *Hilzheim*,
*ubi supra.*   Verdict in excess of damages good.    *White* v.
*Graves*, 24 Miss. 166.

5. The plaintiff in error could not be prejudiced by the
introduction in evidence of the contract as it was introduced
by them.

6. The verdict was right on the evidence.   The evidence of
fraud satisfied the minds of the jury.   The court will not
reverse for erroneous instructions.   51 Miss. 110, 128 ;  4 S.
& M. 57.

*Potter & Green*, on the same side.

On the questions of the right to bring the suit, tender and
the form of the verdict, we refer the court to the brief of
Messrs. Green & Pickens, and we will only call attention to
the alleged error of the introduction of the copy or pretended
copy of the contract in evidence, and to the question as to
whether this court should reverse the judgment and set aside
the verdict.

There seems to be some question whether the fac-simile of
the contract produced by the defendants' counsel was a dupli-
cate original or a mere copy.   But as a copy would be more
favorable to the plaintiffs in error, let us construe it as such.
Whether copy or original, it is the contract between the
parties, and so admitted by Burke, one of the defendants.
The object and end of the production of the original was to
get the exact contract between the parties ; and if this is
attained by the admission that a copy contains the terms, then
the rule is satisfied.   It would be obnoxious to every rule of

common sense as well as law to say that although this was the admitted contract, yet, because it was not the original, that this judgment should be reversed. Judicial proceedings are for the ascertainment of the just rights of litigants, and it is in conflict with every rule of policy, expediency and right to allow such a shadow to defeat the rights of the defendant in error. Even granted, for argument's sake, that it was error to introduce the copy originally, yet when the defendants admitted that the copy showed the contract, it rendered what was inadmissible before plainly admissible. To reverse for such would be to leave the substance and pursue the form.

This court will not reverse a judgment when the verdict is right on the facts, no matter what errors of law were embodied in the instructions. *New Orleans Railroad* v. *Burke, ante,* 200. Following this most righteous judgment, we confidently assert that where there may be errors in the record, if they are not of such a character as to be vital, then this court will not set aside the verdict. Especially is this the case when there is no exception taken in the court below to the judgment overruling the motion for a new trial. The parties did not complain of the refusal to grant a new trial in the court below, save as to the ground of requiring the defendant in error to pay the tender into court, and cannot here insist it was error. The ground of the removal of the tender from court was untenable. No tender was necessary to maintain the action. The plaintiffs have a remedy for the amount, but not in this action.

We submit that this is a case where justice has been done, and the judgment should be affirmed.


CAMPBELL, J., delivered the opinion of the court.

The chief question in this case is this: A. delivers personal property to B. under a contract, not recorded, that B. shall pay the price by instalments, and that until such payment in full the title shall not vest in B. but shall remain in A. Before full payment by B., he sells and delivers the property to C., who has no notice of the terms of the contract between A. and B., but buys the property on the faith of B.'s possession. Does C. acquire title, as against A., or can A. recover

the property from C., after breach of the condition on which title was to vest in B. ?

Reason and the overwhelming weight of authority pronounce in favor of the right of the vendor in such conditional sale to recover *his* property in the case stated, either from his vendee or a purchaser from his vendee. Who has not title, cannot confer it. In the case stated, the vendee has no title until he performs the condition on which title is to vest in him. Until payment of the price, by the express terms of the contract the title is in the vendor. No law forbids such a contract, which, being valid, determines the rights of the parties.

A buyer must beware of purchasing from one who has not title. Possession is not title. It is *prima facie* evidence of title, but nothing more. A buyer should not content himself with *prima facie* title. It cannot avail him as against the title. It will, until the presumption arising from possession is removed; but when the *prima facie* title is destroyed by proof that, while title seemed to be in the possessor, it was in truth in another, the *prima facie* title must yield to the actual title. A buyer may trust to appearances; but if they prove false and delusive, he takes the risk, and must abide the result. Until possession shall be made conclusive evidence of title, a buyer must be held to take the risk that the *prima facie* title of his vendor, from possession, may be destroyed by the truth of the case. Whether the possessor of property has borrowed it, or hired it or purchased it, and what is the nature and extent of his right to it, should be ascertained by him who proposes to deal with him as to such property. Possession of personal property by the seller, after an absolute sale, is only *prima facie* fraudulent, and is explainable, and the title of the vendee is upheld, when the continued possession of his vendor is explained so as to repel the presumption of fraud. The legislature has not made possession, short of three years, without record notice of its character, evidence of title in the possessor as to creditors or purchasers, and the courts should not do so. Code, § 2893; *Mount* v. *Harris*, 1 S. & M. 185; *Lewis* v. *Gilmer*, 3 S. & M. 560; *Patton* v. *McCane*, 15 B. Mon. 555.

Undoubtedly, as possession is *prima facie* evidence of title

the burden is on the vendor to show the *condition* of the sale, and that it has not been complied with, so that his right to possession has accrued. But when he does show this satisfactorily, and he has not in any way waived the condition, nor done or suffered any thing to mislead a purchaser from his vendee, his right, as reserved by the contract of sale, must be protected. Story on Sales, §§ 313, 457 *a*, and cases cited. The Supreme Court of Kentucky has overruled the case of *Patton* v. *McCane, ubi supra,* but we prefer the reasoning of the earlier case. In the case at bar the plaintiff below, recognizing that the burden was on him to show the condition on which the title of the property was to vest in his vendee, and that it had not been performed, attempted to do this, but failed as to non-performance of the condition, because it does not appear that the payment made by his vendee with the note transferred as payment was not valid.

The evidence fails to show either that the representations on which said note was accepted as payment were untrue, or that the security for the note was not ample, even if it was not the paramount claim. It is not shown that the deed of trust made by Edgar for Taylor is older than that for the security of the note.transferred to the plaintiff, as payment by his vendee.

The contract of sale in this case was in writing, and should have been produced, or its non-production accounted for, but it was established by secondary evidence. It does not appear that the plaintiffs in error made and saved their objection to this, so as to avail of it here. Objection should have been made to it on specific grounds, when offered.

The plaintiff below made demand of his vendee for performance of the condition of the sale ; and, upon his failure, as the plaintiff claims, rescinded the contract, by tendering to his said vendee all he had paid him on said purchase, and demanded a return of the property. The vendee having sold and delivered the property, the plaintiff demanded a return of the property from said second vendees, and, upon their refusal to surrender it, brought an action of replevin against them for it. A rescission of the contract by the plaintiff below was a condition precedent to his right to sue for the

property ; and, to rescind, it was his duty to return or offer to return to his vendee what had been paid on the contract of sale. This he did. Story on Sales, § 427, note 4 ; Story on Sales, § 457, note 2. If his vendee had kept the property, and the action was against him, the court might have required the plaintiff to bring into court the money he tendered him ; but as the tender was to the vendee of the plaintiff, and the action is against others, who are strangers to the contract of sale made by the plaintiff, the court rightly overruled the motion to require the plaintiff to pay the money into court. He had tendered the money and the Edgar note to his vendee, and that was all he could do or was required to do in this respect.

The third instruction for the plaintiff below should not have been given.

The verdict should have found the value of the different articles of property separately.

The judgment against Mrs. Cummings, a married woman, is not void on the ground that she is a married woman, and is not shown to have separate property. The writ of replevin is against her and another. They had the property in possession, and when it was seized by the sheriff under the writ of replevin, they gave bond, and had the property restored to them, under § 1530 of the Code. The married woman had the right to execute such a bond (§ 1781 of the Code), and, as a legal consequence, she is subject to judgment upon it against her and the other obligors.

The motion for new trial should have been granted, and the judgment is reversed, and cause remanded for a new trial.