### John H. Mitchell *v.* Henrietta Harris, George H. Harris, Eva Harris, and Samuel D. Harris.

1. Sales by Commissioners.—Before the confirmation of a sale, by a commissioner in chancery, under a decree of foreclosure, the whole matter is *in fieri*, and under the control of the sound legal discretion of the court; and the conveyance of title should generally be withheld till confirmation of the sale.

For exceptions to this rule see 3 S. and M. 493; 4 ib. 210; 23 Miss., 434.

2. Sales in Chancery—Terms on which Re-opened.—Sales by commissioners in chancery will not be re-opened either before or after confirmation, except for special cause; and not then unless the purchaser, being free from fault, shall be fully indemnified by the re-payment of the purchase money, costs and expenses.

3. Same.—After confirmation of report of sale, a mere increase of price, however large, will not induce a court of equity to re-open the biddings, though such increase is a strong auxiliary argument when there are other grounds. Nor is inadequacy of price sufficient, unless it be such as to create inference of fraud. There must be some such ground as fraud, accident or surprise, preventing a fair sale, and working injustice to some party interested.

4. Same—Case at Bar.—Commissioner to sell mortgaged property under a decree of foreclosure, brought on sale without notice to complainant or defendant, or the solicitor of either, and property estimated to be worth from $5,000 to $6,000 was sold, in the absence of all the parties in interest, at a single bid, and without competition, for $100. *Held:* that the sale was properly set aside by the chancellor, on the ground of surprise.

Error to the chancery court of Noxubee county, Foote, J.

The facts are recited in the opinion of the court. The plaintiff in error assigned the following errors:

1st. The court below erred in refusing to confirm the commissioner's report of sale; in setting aside and vacating said sale, and ordering a re-sale of the land described in the decree.

*Johnston & Johnston*, for plaintiff in error.

The grounds presented by the record for setting aside the sale in this case, are resolved into the following: Inadequacy of price, the advanced bid, accident, and surprise. The sale was improperly set aside, it having been made with perfect regularity, and according to the terms of the decree, and without unfairness on the part of the commissioner or purchaser. The practice in the English courts upon this subject, differs from our practice. The former will open the biddings at any time before confirmation, on the ground of inadequacy of price. The policy of this rule may well be doubted. 2 Smith's Chancery Pr., 235; and Lord Elden in Williams v. Attleborough, 11 Eng. Ch. R., 43.

In Duncan v. Dodd, 2 Paige, N. Y. R., 101, the court decide that the English practice of opening biddings is not adopted in that state. In 3 Johns. Ch. R., 290, Chancellor Kent says the English practice has never prevailed in this country. In Henderson v. Herrod, 23 Miss., 434, it is held that the English practice to withhold confirmation for inadequacy of price, or because a better was offered afterwards, has never prevailed in this country, and in this state particularly, such practice has never been adopted. Sales of commisioners under decrees should be regulated very much by the rules which apply to execution sales at law. The interest of suitors, and public policy demand that such sales should be certain and obligatory, and that the purchaser's title should be held equally valid. Henderson v. Herrod, 23 Miss., 434. See also, Livingston v. Byrne, 11 Johns. R., 566, in which the court say, " that the sales will not be invalidated by inadequacy of price; that it is necessary to secure proper confidence on the part of the purchaser at sales of this description," etc. 1 Story's Eq. Juris., § 245.

With regard to the other grounds for setting aside the sale, see Collier v. Whipple, 13 Wend. N. Y., 226. It is held in this case that frauds or misconduct, or fraudulent negligence in any person connected with the sale, and also surprise created by the conduct of the purchaser, will induce the court to set aside the sale. The court refers to Morris v. the Bishop of Durham, 11 Vesey's Ch. R., 57; and White v. Wilson, 14 Vesey's Ch. R., 151; also, Gower v. Gower, 6 Bro. P. C., 148. The rule laid down by Chancellor Kent in the case of Williams v. Dale, 3 Johns. C. R., 290, we think perfectly conclusive in favor of the purchaser's rights in this case.

On another point, however, the decree must be reversed. In setting aside sales, the first purchaser is allowed all costs and expenses fairly incurred, and he should be fully indemnified. 2 Smith's Ch. Pr., 248. This, the party seeking to set aside the sale, should offer to pay. This the petition fails to do. Upon this point see Wright et al. v. Cantzon, 31 Miss., 517. And now we return to assert that no case can be found among the English decisions where a sale was ever set aside upon such a state of facts as is presented in this case; nor can any be found in the decisions of this court, or in those of any other court in this country. A careful examination of all these cases, English and American, directly deciding this question, will show that in them, there was fraud, or some misconduct on the part of the purchaser, or other person, connected with the sale, where the parties in interest, themselves, have not been negligent; and upon considerations of this nature alone, has the power of setting aside the sale been exercised.

We will notice only the points made and relied on in the court below by the defendants in error, relying upon the presumption that no others will be here considered. The rule, that objections and points not made in the court below, and presented by the record, will not be considered by this court on writ of error, is too well established to be now questioned. Randolph v. Doss, 3 How., 205; Prussell v. Knowles, 4 How., 90; Neely v. Planters Bank, 4 S. & M., 113; Dixon v. Por-

ter, 23 Miss., 84; Dyson v. the State, 26 Miss., 362; Bins v. Stokes, 27 Miss., 239; Parr v. Gibbons, 27 Miss., 375. The facts of record show that the plaintiff in error was an innocent purchaser, at open sale, under a valid decree, without notice of any irregularities, mistakes, or frauds, the highest and best bidder for the mortgaged premises, and parted with his money under the sale. As the investment appears to be profitable, should the sale stand, he is entitled to the benefit of it.

The money decreed to be paid was not paid within the limited time, and it became the imperative duty of the commissioner to proceed with the sale. He had no discretion to postpone the performance of that duty, and had he failed to make the sale as directed by the decree, he would have been answerable for all damages resulting from his dereliction. He was thus bound to proceed unless instructed otherwise by the party benefitted by the decree. The decree merely directs the sale to be made according to the requirements of the statute regulating sheriffs' sales under final process on judgments. Rev. Code, p. 528, art. 277. Various grounds are urged by the defendants in error for setting aside the sale and ordering a re-sale. First, It is alleged that neither they nor their solicitors knew anything of the sale, nor saw the advertisement, nor knew that there existed an intention to sell. We insist they had legal notice of the sale in this, that the notice was published in a public newspaper in Noxubee county, and that, by law, is notice to all the world. The law presumes that the party *saw* the advertisement; besides the decree directed that the advertisement should be made in that very newspaper.

It is, secondly, alleged that the commissioner *knew* that there would be a sacrifice of the land if sold on the designated day. He says in his answer that he knew nothing of the land or its value; that he met a large crowd at the sale, and thought complainants would be represented. But the probability of a sacrifice would not justify the commissioner in stopping the sale, nor relieve him from the consequences

of that act. Thirdly, It is stated that the plaintiff in error was the only bidder at the sale ; that he knew nothing of the land and bid speculatively. Admit all this to be true, and yet it affords no ground for setting aside the sale. Fourthly, It is alleged that the sale occurred by *accident.* This allegation rests alone on the fact that complainant's solicitors wrote a letter directing the commissioner not to sell, and sent it by mail, but which letter the commissioner never received. In reply, we say that the solicitors took the chances of the mail and assumed the risk of miscarriage of the letter. They ought to have given personal notice, or provided for delay in the decree, or have filed such notice in the papers of the cause. Fifthly, It is urged that complainants were *surprised* by the sale. The notice relieves only against such surprise as the party could have guarded against by exercising strict diligence. The regular operation of law can never constitute legal grounds of surprise. Land v. Elliott, 1 S. & M., 608; Thompson v. Williams, 7 S. & M., 270; 2 Bouvier's Law Dic., 565, title : Surprise. In the sixth place it is insisted, and pretty well proven, that the "Beacon" newspaper had a very small circulation in Lowndes county, where complainants and their solicitors resided. We may well say that if not one copy of that journal circulated there, still the notice was good, under the law, to all persons in interest.

In conclusion, we ask attention to the fact that Mitchell paid his money under his bid ; that no offer has been made to refund that money, nor has any tender been made for his expenses and trouble in endeavoring to perfect his purchase.

*R. Evans & Son,* for defenants in error.

In Learned v. Matthews, 40 Miss., 210, Chancellor Buckner is quoted and confirmed in this, that "The true theory of sales of that character is, that the court is itself the vendor, and the commissioner, or master, its mere agent for executing its will. The whole proceeding from its incipient stage up to the final ratification of the reported sale, and the passing

of the title to the vendee, and the money to the person enti-
tled to it, is under the supervision and control of the court."
Robertson v. Haun, Freeman's Ch. R., 265; Tooly v. Kane,
S. & M. Ch. R., 518.

The whole case is *in fieri*, and subject to be set aside or
confirmed according as the law or justice of the case requires.
See Rev. Code, 528, art. 278. " Defect of bidders caused by
inclement weather or otherwise," gives to the " sheriff, or
other officer," the power to adjourn the sale and re-advertise.
This is a rule which a court of equity enforces without the
aid of statute law, as it requires the action of the commis-
sioner to be reported, and as the sale is not complete until
confirmed. The above statute, however, was obligatory on
the commissioner, and both commissioner and purchaser are
affected by the notice of the fact, that there was a " defect of
bidders," for the reason that complainant and defendant, and
their counsel were all absent.

The court has power to watch over the execution of its
decrees, and to regulate all proceedings under them, until the
case is finally disposed of. Tooly v. Gridly, 3 S. & M., 514.
The circuit court has power to set aside a sale. Sanders v.
Dowell, 7 S. & M., 218. It is the duty of the commissioner
to obey the instructions of the complainant's solicitor, to
prevent injury to any and all parties, and to adjourn the sale,
if necessary, to prevent a sacrifice. Requa v. Rea and Wife,
2 Paige, 339–341, 342. The sale was set aside and resale
ordered, on one of the defendants' offer to bid fifty per cent.
more than the original price bid. Lauring v. McPherson,
3 Johns. Ch. R., 424; 1 Sugden on Vendors, chap. 2, § 1,
" of the proceedings from the advertisement to the convey-
ance;" also § 2, " on opening biddings and rescinding con-
tracts;" see also p. 67, margin.

In this case the report of the commissioner has not been
confirmed, and both parties, complainant and defendant, join
in the application to set aside the sale and order a re-sale,
complainant offering thirty times as much as the purchaser
bid. Collin v. Whipple, 13 Wendell, 224; Tripp v. Cook, 26

Wend., 144. This sale took place without instructions from either parties or solicitors, without their knowledge, without any one to represent them, and after the commissioner had been instructed by letter, through the mail, not to proceed to advertise without instructions. There was but one bid, $100 for the property, worth from $7,000 to $8,000, at least, at the present low price for land. The commissioner must have known that he was abusing the trust reposed in him by the court, by inflicting such a sacrifice on complainant and defendant, and converting the court of equity into a shop of speculating cupidity. The purchaser stands in a condition no better. His purchase money can be returned to him. Everything put in *statu quo*, the rights of every one saved, and no one injured. To show that the commissioner cannot have the sale all his own way, see Lugden on Vendors, chap. 2, § 1, p. 55, paragraph second. The above is cited to show that the complainant and defendant had a right to be consulted, if not the right to direct.

In behalf of a speculative adventurer, it is mere folly to talk about the obligation of the contract, vested rights, *bona fide* purchase, etc. There is no contract, no vested right, no *bona fide* purchase. It is only incipient, a part of it is the report to the chancellor, his confirmation of it, and order for the deed, etc. The money received and deed made otherwise than as the chancellor shall order, are null and void. The contract is one between the court and the purchaser. Needer v. Fonda, 3 Paige, 97; Bland's Ch. R., 527. See also, Duncan v. Dodd, 2 Paige, 99–101; Collins v. Whipple, 13 Wend., 224; Williamson v. Dale, 3 Johns. Ch. R., 290. In this case the chancellor does not proceed on the grounds of the English practice, but on the ground of surprise unintentionally occasioned by plaintiff and his solicitor. The purchaser, however, stood fair, but the sale was set aside. Apply the above rule to this case.

Here both complainant and defendant are taken by surprise. The commissioner had been instructed not to sell. Both complainant and defendant had agreed not to sell, and

were resting in security as they believed. The premises were security for $5,000 and interest. The sale was made without the knowledge of either of the parties. But a single bid is made—that of $100. There has been no report, no confirmation, and no deed ordered by the court. Heard, admr., v. Whitehead, 41 Miss., 407–8. The supreme court will refer to the exercise by the probate court of its discretion to confirm or not.

As to inadequacy of price. One hundred dollars for land worth six or seven thousand dollars, and standing as mortgage security for five thousand dollars, sold in the absence of every one interested, sold on a single bid of one hundred dollars—the sixtieth part of its value—comes fully up to the requisitions of law to establish fraud. Chitty on Cont., 29; 1 Parsons on Cont., 363–384, 2d book, chap. 1, § 3. "There is no case where mere inadequacy of price, alone, has been held sufficient to set aside a sale made between parties standing on equal ground, and dealing with each other without imposition or oppression. And the inequality amounting to fraud must be so strong and manifest as to shock the conscience and confound the judgment of any man of common sense." There is a very important distinction, which runs through all the cases, between ordering a contract to be rescinded and decreeing a specific performance. Osgood v. Franklin, 2 Johns. Ch. R., pp. 23–4.

As to the mode of presenting the case to the court. In Henderson v. Herrod et al., 23 Miss., 434, p. 456, Mr. Justice Yerger states the practice to be: 1st. By petition where the original suit is pending, undecided in the court, and the purchaser at the sale is one of the parties to the suit, and continues to hold the property; 2d. By bill, where the original suit is determined, and the purchaser was not a party to the original suit; 3d. Although the original suit was undetermined, and a party thereto was the first purchaser, yet if other persons not parties to that suit have acquired an interest in the property, the proceeding should be by bill. " Prior to confirmation, the whole subject matter is *in fieri*,

and under the control of the court, subject to the exercise of a sound discretion." " Each party has a right to move for, or resist a confirmation." Justice Yerger in his deduction of these principles, had his mind too closely riveted on the case before him to give to his deductions the merit of general principles. They are true only when applied to a case similar to Henderson v. Herrod, where the confirmation was made and the term passed. Applied to the case in hand, where there has been no confirmation, the above principles are not true, and are calculated to mislead.

What does he mean when he says that prior to the confirmation each party has a right to move for or resist a confirmation ? Can he mean that the purchaser, because he is neither complainant nor defendant, cannot make such a motion? The purchaser, by his purchase, becomes a party, " submits himself to the jurisdiction of the court, as to all matters connected with such sale, or relating to him in the character of purchaser. Requa v. Rea, 2 Paige, 341; Sugden on Vendors, 49; ib., 59, 60. The principles of Judge Yerger cannot be maintained when applied to a case where the report has not been confirmed or where the term at which confirmation is made has not transpired.

As to the opening of biddings: Notwithstanding Mr. Justice Yerger says in the above case that the English practice of opening biddings, where an advanced price is offered, has never been adopted in this state, it may be said, with confidence, that gross inadequacy of price, coupled with even slight circumstances of fraud, mistake, error, surprise, and the like, never fails to meet with relief in any court of equity in England or in any of the states of the United States, or elsewhere; and in all cases where equity requires it, the opening of biddings will be adopted in all courts of equity in cases where the sale has not been confirmed.

Peyton, C. J.:

Henrietta B. Harris, on the 16th day of April, 1868, obtained a decree in the chancery court of Noxubee county,

against George H. Harris, to foreclose a certain mortgage on land, executed by him to secure the payment of a debt of $5,000 and interest thereon, and to sell the mortgaged premises for that purpose.   And R. E. V. Yates, the clerk of said court, was appointed to execute said decree, who sold the mortgaged property on the 6th day of July, 1868, at auction, for cash, to John H. Mitchell, for the sum of one hundred dollars.   The said commissioner, at the next term of the said court, on the 12th day of October, 1868, made his report of said sale to the court, and asked confirmation thereof.   The plaintiff and defendant in the foreclosure suit, then excepted to the report, and at the same time filed their petition to set aside the sale and for a re-sale of the property mortgaged, alleging that they knew nothing of the sale until after it was made, nor of the intention of said commissioner to proceed under the decree without instructions so to do from them or one of them, and that they had no reason to believe that he would proceed in a matter wherein they were so deeply interested without giving them notice through the mail or otherwise, and that the said commissioner well knew that to sell at auction in the absence of the petitioner, would result in a sacrifice, in the loss of the claim of one of them, and of the land of the other.   That the said commissioner inquired by letter of the solicitors of the complainant in the decree, whether he should proceed, and that the answer was sent to him by mail, that he must not, and that he should take no further steps in the matter until further instructed.   That of the petitioners, the plaintiff in the decree offers as her first and minimum bid for said land, on a re-sale thereof under said decree, the sum of $3,000.   They further charge that the said sale and sacrifice were made either by fraud, accident or mistake, and that they were made to the great surprise of the petitioners, who therefore pray that the said sale be set aside, and a re-sale of the said property ordered.

The commissioner in his answer to said petition, admits that he sold the land mentioned in the decree at the time stated, and that the sale was made in pursuance of, and in execution

of the said decree, and that in making said sale, he conformed in all things to the directions of the said decree and of the law of the land governing such sales.   That some time in the month of May, 1868, he informed the solicitors of the complainant, residing at Columbus, in this state, by letter, of the date of the decree, and requiring them to say whether or not he should proceed with the sale.   To this letter he never received any answer, nor any instructions in the premises. That said sale was made in an open, fair and public manner, in the presence of many persons.   He denies all fraud, collusion, conspiracy or combination on his part, or within his knowledge by any other person, to defraud said petitioners. That he did nothing in said sale but discharge his duty as a public officer, in good faith to the court and the parties to the suit, and without, in anywise, intending to sacrifice the defendant's property, or destroy the complainant's security for her debt.

Mitchell, in his answer to the petition, admits that he purchased the lands specified in the decree at the sum of $100, which he paid at the time of the sale, and insists that said sale was fair in every respect; that he purchased in good faith, and expressly denies that he conspired or colluded with any one for the purchase of said land, and insists upon a confirmation of the sale thereof.

Upon the reading of the exceptions to the report and petition for re-sale, the court set aside the sale and ordered a re-sale of the mortgaged property; and from this decree the said John H. Mitchell brings the case to this court by writ of error.

From the facts of this case it will be readily perceived that the propriety of the action of the court below in setting aside the commissioner's sale and ordering a re-sale of the mortgaged property, presents the only question for our determination, and in the solution of which it may be observed that before the confirmation of the sale the whole subject matter is *in fieri*, and under the control of the court, which has full power to regulate the whole matter—to confirm or

set aside according to its discretion, and this is a consequence of the rule that no such sale is valid till confirmation. But this discretion is not an arbitrary, but a sound, legal discretion, governed by the established rules of practice and the principles of the court. What would be sufficient grounds for a refusal to confirm must depend in a great degree upon the circumstances of each case. Henderson vs. Herrod, 23 Miss., 434.

As, generally, in sales of this kind, it is the duty of the commissioner charged with the execution of the decree, to report the sale to the next term of the court for confirmation, and in the meantime withhold the conveyance of title from the purchaser until the confirmation of the sale. And thus withholding the title is a necessary corollary from the general rule that no such sale is valid until confirmed by the court. To this rule, however, there may be an exception, resulting from the conduct of the parties to the sale, who may act in such a manner as to give the sale the validity and effect of an order of confirmation by the court. 3 S. & M., 493 ; 4 ib., 213 ; 23 Miss., 453.

As it is the aim of the court in every sale of this character to obtain as great a price for the estate as can possibly be got, the court of equity in England will open the biddings before the report of the sale is absolutely confirmed, upon a mere advance of price. This practice is not generally recognized in this country, and it is not desirable that it should be introduced here. The biddings will not be opened in this state, either before or after confirmation, except for special cause, and not then unless the purchaser, who is free from fault, is fully indemnified by repayment of the purchase money and the costs and expenses to which he has been subjected. This rule is reasonable and just. But after the report of the sale has been confirmed, an increase of price alone, however large, is not sufficient to induce the court to grant an application of that character, although it is a strong auxiliary argument when there are other grounds.

The court of chancery has never interfered with a sale for

mere inadequacy of price, unless it is such as to create an inference of fraud, but has uniformly declined to do so. It has always required some special ground to be laid—such as fraud, accident or surprise, which has prevented a fair sale of the property, and worked injustice to some party whose interest is affected by the sale. Without going into an enumeration of the many causes for which public sales have been set aside, yet we see that many of them are founded on the principle that fair competition in the biddings has been prevented, and sacrifice of the property may have been incurred to the prejudice of those interested. This principle rules in cases of sales by auctioneers, executors, administrators, trustees, commissioners, and all others having authority to sell.

A re-sale will be ordered where there has been fraud or misconduct in the purchaser; fraudulent negligence or misconduct in any other person connected with the sale; surprise or misapprehension, created by the conduct of the purchaser or of some other person interested in the sale, or of the officer who conducts the sale. Lefevre v. Laraway, 22 Barbour, 167–173.

It appears from the evidence in this case, that property estimated to be worth from five to six thousand dollars, was sold by the commissioner at public sale to the plaintiff in error, for the sum of one hundred dollars. This gross inadequacy of price alone, would perhaps not be sufficient to justify the court in refusing to confirm the sale on that ground only, but when taken in connection with the surprise or misapprehension of the parties interested in the sale, evidently created by the officer, who conducted the same, it was abundantly sufficient in our opinion, to sustain the action of the court, in setting aside the sale of the commissioner, and ordering a re-sale of the mortgaged property.

The testimony shows that the decree of foreclosure was obtained in the chancery court of Noxubee as before stated, and that the plaintiff and defendant resided in the town of Columbus, in Lowndes county, as also did the solicitors of the complainant. And the commissioner says that some time

in the month of May 1868, he informed the solicitors of the complainant, by letter, of the date of the decree, and therein required them to say whether or not, he should proceed with the sale. This letter, the said solicitors say they received, and answered immediately through the mail, instructing him not to advertise and sell until he got further orders or instructions upon the subject from them or their client. This letter, however, the commissioner says he never received. The failure to get this letter was a mere accident, as other letters had been received by him from complainant's counsel through the same medium. From the correspondence which had taken place between these parties upon this subject, the complainant and her counsel had good reason to believe that this answer to the commissioner's inquiry had been received and acted upon by him, and that the sale would not be made until advised to do so, either by the said complainant or her counsel. This inquiry of the commissioner clearly indicated that he was disposed to avail the directions of the complainant or her counsel, and that the sale would not take place before he received further instructions from them in relation to it.

In this state of things, without awaiting instructions from the complainant or her counsel, and without further communication with them or either of them, the commissioner brought on the sale, and sold a valuable tract of land, without the knowledge, and in the absence of the parties interested in the sale, to the plaintiff in error, who at a single bid, without competition, bought the same at the sum of one hundred dollars. The sale under these circumstances, was wholly unexpected by the complainant, and was a surprise to her.

It is the right of every party concerned in interest in property, when about to be sold at public auction, to have it offered for sale under such circumstances as afford an opportunity for fair competition amongst all who may be disposed to buy. And in order to effect this, in the case at bar, under the circumstances, the plaintiff and defendant in

the decree, being the parties most interested in the sale, should have had notice of the sale and an opportunity afforded them to attend the same. As these parties reside in another county than that in which the sale was to be had, and finding neither of them or their agent or attorney present on the day of sale, it was the duty of the commissioner, in order to prevent a sacrifice of the property, to have postponed the sale and given notice thereof to the parties interested. Sales of this kind are conducted in the same manner as sheriffs' sales under execution, and the commissioner or master making the sale has the same power as the sheriff has to adjourn the sale, whenever from a defect of bidders, the property shall not be likely to command a reasonable price.

It appears from the evidence in the record that the defendant in the foreclosure suit was in insolvent circumstances, and that the mortgaged property was the only security the complainant had for the payment of her debt, and to sustain this sale, under the circumstances, the result would be a loss of the defendant's property, and complainant's claim.

We wish it to be distinctly understood, that we base this decision on the ground of *surprise* to the complainant, created by the conduct of the sale.

Let the decree of the court below be affirmed.