JAMES, J.,
concurring in part and dissenting in part:
¶ 19. I agree with the majority that the title of the mobile home did not pass to O’Neal or Mr. Ketchum. However, the majority also finds that O’Neal asserted a new claim on appeal, and as such is procedurally barred from pursuing it on appeal. I respectfully dissent.
¶ 20. In the amended complaint, O’Neal stated that the trustee’s deed “is completely void ab initio by virtue of the failure of the trustee to follow the laws made and provided for [the] purpose of foreclosing on deeds of trust in the [SJtate of Mississippi.” O’Neal attacked the validity of the sale by alleging that the trustee failed to follow the laws of foreclosure, which encompassed the allegation that the sale was invalid because no bid was entered at the auction.
¶21. Further, at trial, Ketchum’s father, Ralph, testified that he was at the sale and did not bid on the property. O’Neal’s trial counsel specifically asked Ralph why he failed to bid on the property. He was interrupted by an objection of opposing counsel. After some discourse, the court then determined that the information sought by O’Neal was privileged information because Ralph’s attorney, who was also the trustee on the deed of trust, advised him about the trustee’s sale. O’Neal then attempted to make a proffer, but Ketchum objected to the proffer as well. O’Neal’s counsel then stated: “I have considered what the witness has said, he has admitted that he did not bid on the property, and that he was there, and there were no other bids. And I don’t need anything more on the record for that.” Counsel’s statements coupled with the inclusive language of the complaint are sufficient to infer that O’Neal raised the issue of the validity of the trustee’s sale. It should also be noted that several months after the foreclosure sale, Ralph executed a quitclaim deed to Ketchum giving him sole possession of the property.
¶ 22. The majority opinion states that no third party appeared to bid on the property, and Koon had been authorized by Ralph to bid the amount of the unpaid balance due on the land. However, the chancellor in her final judgment, based on the proof, stated: “[N]o one appeared or bid on the property. Accordingly then, by operation of law, the land reverted back to Ralph.”
¶ 23. The record clearly shows that no sale took place. Therefore, Ketchum and O’Neal remain cotenants of the property in question. In Mississippi Real Estate Foreclosure Law, it is stated that “a mortgagee can purchase property at the foreclosure sale under Mississippi law. However, ... the trustee is the agent for both parties to the deed of trust and occupies a fiduciary relationship as to both.” K.F. Boackle, Mississippi Real Estate Foreclosure Law § 4-8, at 48 (2d ed.2002).
¶ 24. It is further recommended that, “[i]n the event the mortgagee is not present, [the trustee should] accept [mortgag *50 ee’s] bid as specified in his instructions as the opening bid.... The mortgagee need not actually tender cash, but may credit the note for the amount of the bid.” Id. § 4-9, at 44. “It is a good practice to have a third party witness present. Once the property has been sold, the trustee should have the witness and other participants execute an affidavit stating the details of the sale.” Id. Also, Mississippi Code Annotated sections 89-1-53 (Rev.2011) and 89-1-55 (Rev.2011) describe the “sale” that takes place during a foreclosure.
¶ 25. Turning to the validity of the trustee’s deed, there was sufficient evidence to declare the deed void, because there were no bids at the sale. The Mississippi Supreme Court has stated that “[i]n a deed of trust the trustee is under a duty to perform his duties in good faith and act fairly to protect the rights of all parties equally.... [B]ut it is the trustee’s duty to sell the land in such a manner as will be most beneficial to the debtor.” Lake Hillsdale Estates, Inc. v. Galloway, 473 So.2d 461, 465 (Miss.1985).
¶ 26. Here, the trustee did not perform his duties in good faith, operating under the mistaken belief that the property automatically reverted back to the beneficiary of the deed of trust, Ralph. Both Ket-chum and O’Neal were listed equally on the deed of trust. Thus, O’Neal was entitled to the same protection as Ralph and Ketchum. Ralph testified that his attorney gave him direction and advice as to what to do in the foreclosure. Ralph’s attorney was the trustee of the deed of trust. By executing a property deed to Ralph without a formal bid, the trustee did not act in a manner most beneficial to both debtors, Ketchum and O’Neal.
¶ 27. According to Mississippi Code Annotated section 89-1-63(2) (Rev.2011):
The beneficiary of a deed of trust or the mortgagee of a mortgage may purchase at any sale which has been made or shall hereafter be made under a power of sale, and any such sale shall not be invalid because of the relationship of such person to any other party to the deed of trust.
The statute indicates that the beneficiary of the deed of trust is free to purchase the property. There appears to be no statute or case law that supports the supposition that if there are no bids on the property, then the property automatically reverts to the beneficiary of the deed of trust.
¶ 28. This Court has also “frequently reiterated our adherence to the general rule that, absent any irregularity in the conduct of a foreclosure sale, it may not be set aside unless the sale[ ] price is so inadequate as to shock the conscience of the [c]ourt or to amount to fraud.” Dunaway v. Morgan, 918 So.2d 872, 876 (¶ 11) (Miss.Ct.App.2006). To shock the conscience of the court, the sale price “must be so inadequate that it would be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.” Id. Here, the sale price for the property was nonexistent, which should definitely shock the conscience.
¶ 29. Further, “[w]here the foreclosure creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral.” Fleisher v. S. AgCredit, FLCA, 108 So.3d 948, 951 (¶ 13) (Miss.Ct.App.2012). There is no evidence in the record that either Ketchum or O’Neal received any credit because no bid was placed at the sale.
¶ 30. “It is elementary that the proceeds of the foreclosure sale determine the rights between the grantor and beneficiary of a deed of trust absent fraud, bad faith or other defect.” Merchs. Nat’l Bank v. Stewart, 608 So.2d 1120, 1127 (Miss.1992). If, after the foreclosure, a debt is still owed on the property, the foreclosing cred *51 itor may be entitled to a deficiency judgment. Fleisher, 108 So.Bd at 951 (¶ 13). For purposes of determining a deficiency, if any, case law recognizes “that the terms of foreclosure ... must be commercially reasonable and that, particularly where the foreclosing creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral.” Shutze v. Credithrift of Am., Inc., 607 So.2d 55, 66 (Miss.1992).
¶ 31. Conversely, where a foreclosure sale has occurred, the debtor would be entitled to any funds above the balance of the amount owed on the property minus the foreclosure costs. Estate of Walters v. Freeman, 904 So.2d 1140, 1142 (¶ 10) (Miss.Ct.App.2004). Without a proper trustee’s sale, it cannot be determined if there was a deficiency or surplus owed to O’Neal and Ketchum.
¶ 32. I concur with the majority opinion that title to the mobile home did not pass to O’Neal. However, I am also of the opinion that the trustee’s sale should be declared void because no sale actually took place. There were no formal bids entered for the property. I would therefore reverse and render this issue and void the trustee’s sale.